I go by Mike Malloy, your honor. I'm sorry. Good morning, counsel. I represent Ellen Murphy in this case. We're here on the issue of whether the district court erred in determining, as a matter of law, that to permit Ms. Murphy's husband to use the bike while his wife is skiing would alter the fundamental nature of the business at Bridger Bowl. I have a number of questions for you, and I think we're all pretty familiar with the records, so I don't want to waste time on that. I'd rather have you apply the facts for the questions that I have. One of the things that your client, the appellant wants access to skiing, but my understanding is she's also claiming that this is part of her rehabilitation of her injury? That's correct. Well, now, if this is an operation to ski, you know, it's not a rehab center or anything like that, why do they, you know, why are you not asking for more than just access to skiing? I mean, she's saying she wants to, you know, I mean, she is skiing on her ski bike, and that's going on, but she wants to sort of mandate the conditions of it in terms of, because she's saying, well, if she has someone along with her imprinting the ways that, you know, that she can do it, she can become a better skier, I guess, but it also would facilitate her rehabilitation from her brain injury? Is that correct? Well, I think I mean, they're, I can't, they're clearly not in the business of rehabilitation from brain injuries. But my understanding of the basic purpose of the ADA is to try to put people with disabilities as well as we can on the same level as those without disabilities. And if the, if she can't have her husband help her with the ski, then she is, she's stuck with staying at essentially a beginner's level. And if she wants to ski better, which I think most people who ski want to do, then she needs the help of her husband in order to help her improve her skiing. But they don't, they don't help most people ski better. They give them access to the ski hill. And I understand, it appears to me that you have a client that, you know, appears to be like she was involved in, this happened in a rock climbing accident. She appears to be a pretty athletic person that she likes to do that sort of thing. But the question is, this place doesn't, they don't have any other of these ski bikes on. They have an absolute prohibition, right? So by letting her use a ski bike, they, they're breaking a rule that they have for everyone else. You know, how much of a duty, you know, isn't this, I mean, I hate to use the slippery slope in the legal sense when we're talking about skiing. But in terms of, she could ski without the ski bike. But then they said, okay, but, you know, then they accommodate her and, because she likes that better with the ski bike. And she does that for a period of time. Now she wants to be a better skier. She is getting the enjoyment of the hill. She is getting to ski, but she'd like to do more. She'd like to rehabilitate herself. She'd like to do more. And she'd like to have company, although her husband's with her anyway. He's on skis. Well, then what is the next thing then? Well, but I want to have friends when I ski. Or, you know, I'd like to have my children when I ski. You know, I mean, where do we, I think the district court said, you know, they've got to be able to draw a line in the sand somewhere. And accommodation isn't getting to ski in the way that you, you know, exactly as you'd want to. So how do you answer those questions? I'm really concerned in terms of that she seems to want to define the conditions, and then the next thing it's going to be something else. And I'm even wondering if letting, giving her the ski bike, did they really have to do that since she could already ski? Does this come under the category of no good deed goes unpunished? You know, where are we going to draw the line? Well, I think the court has to draw a line. After considering the evidence submitted on the question of whether or not permitting her husband to accompany her on a ski bike increases the risk of harm to someone, because that's their basic argument, that by permitting him to use the bike, the harm is increased. They have accepted the risk attendant to Ellen using the bike. So the real central issue here is whether or not the risk is significantly increased by letting Mr. Colasar use the bike. That is a question upon which there is an exquisite disputed fact. But let me, okay, let's accept that. She skied safely this way for a period of, what, 10 years or something along those lines. So she's, they haven't had accidents due to her. But why, they have to reasonably accommodate her, correct? Correct. And they don't allow anyone else to ride these ski bikes. Why can't, even if it's a disputed fact, why can't they factor in the more bikes they have out there? You know, why, she hasn't made any showing that it's protectual, that sort of letting other people ride bikes as far as that goes. Why can't that just be part of, the court looks at all of that and says, you know, that's a reasonable accommodation. And they can, it's, this isn't like a golf course. I mean, in the cases, and maybe it's not like HIV positive in the karate. It's, let's put it somewhere in between. But most of the cases, if you look out there on skiing, you know, there are all these assumptions of the risk cases. It's inherently dangerous to anyone without a disability. Why can't they factor that in and still have a reasonable accommodation? They can factor that in. And the job of the court, it seems to us, is to make a determination about whether or not on the elements of our claim, we have established that the accommodation is reasonable and that the defendant has met its burden of establishing that this rule, which we've asked an exception to, would constitute a fundamental alteration of the operation of its business. And we've not had a hearing on that issue. And there is an exquisite disputed fact on that issue. Can her husband accompany her on a ski bob in that Eagle Mountain area that's designed for disabled skiers? The Eagle Mount is a program that uses the same slope that she would be skiing on by herself. It's just a program. She has to pay for that, and the people that help her are volunteers who, for the most part, have no experience on a ski bob. But does the ADA require a ski hill to give someone the opportunity to be an expert skier and go down the double black diamonds? No. I think a ski hill has the obligation to make its facility available so that people can get better on skis and get better in a way that provides a safety mechanism for all other skiers on the hill. Do they have to help people rehabilitate in their injuries? No, I don't think so. So that really isn't, I mean, even though that seems to be part of your client's claim, that she can't really, you know, rehabilitate mentally and work on her, you know, her sort of thought process. I just don't see how a ski hill can be required to help a person do that. No. They're not helping anyone do that. And I agree with you, and I think that I probably didn't answer your first question very well. The cognitive problems that Ellen has make it difficult for her to ski properly unless someone is actually demonstrating it. And so that's the reason the cognitive issue comes in. And she has to have her husband there or someone who can ski with her on a bike so she can watch them turn on the snow. And that's... Well, I guess that I'm seeing reasonable accommodation possibly expanding to it would be more fun, you could get better. But I'm having trouble finding that in the ADA, and I'm having trouble defining, you know, where you draw the line, where, you know, how would employers know? There's a counsel for Bridger submitted a supplemental citation of authorities in three cases. One of them is the Fortune VAMC case involving the question of whether or not a movie theater has to keep the seat next to the disabled person's space where they put their wheelchair open so that the disabled person can have their significant other or their friend sit with them during the course of the movie. And this court ruled a year ago that by requiring the movie theater to keep that seat open did not fundamentally alter the purposes of the theater and permitted a non-disabled person, the spouse, to sit next to the person and enjoy the movie. Because a movie theater, you know, well, I can't say this is entirely true because violence happens in movie theaters, but they're not considered to be... It's not a dangerous... It's not considered to be a sport like skiing. It's a lot closer to the golf cart, I think. Well, the hardest thing for us to swallow with respect to the district court's decision is that we didn't have an opportunity to present all of these safety issues that obviously are central to this case. And instead, the district court decided that Bridger Bowl could define its own limits of what was a reasonable accommodation. And it gave deference to that determination based on a standard which has only been applied to academic institutions. And that's really, if you look at this case from the standpoint of precedent, that's the dangerous precedent that would be established. But see, they're not applying it just to your client. In fact, they made an exception for your client. No one else gets to use a ski bike on the hill. They made a reasonable accommodation for her and determined that whatever safety risks were involved in making that accommodation, they were acceptable. Let me ask you a question. Yes. I gather one of the services that Bridger Bowl offers to skiers is training. That's true. The opportunity to take lessons. Right. And as I understand the record, they offered similar opportunities to Ms. Murphy. She does have that. They gave her two lessons, one of them in order to see whether or not she could function on this ski bike. They gave her two lessons. And after those two lessons determined that she could get down the hill safely on the bike. But I gather that suggested to me that I gather that if she wanted more lessons, they would offer. Because apparently they had one of their own. She could pay for that. She paid for that training. So why doesn't that, you know, to the extent that she wants to improve her capabilities or her skiing ability on the ski bike, why doesn't that sort of satisfy her needs? In other words, why is it necessary to have her husband on the ski bike when she could get similar services that non-disabled people are able to? Well, except that this goes beyond the record. I learned how to ski skiing with friends who were good skiers. And my wife is a good skier, and that's how I learned how to ski. And I didn't have to pay for those lessons. And I think that Ellen is asking for the same kind of consideration on this hill. Well. Certainly she could pay for them. Well, the statute says a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations. Well, privileges and advantages to me as a non-disabled person were to have my wife ski with me. And in doing so, I learned how to ski. In Ellen's case, it's much more difficult because she has a cognitive problem that makes it difficult for her to learn how to ski when someone's telling her what to do. And her husband can go down the hill with her on his own skis and tell her what to do, but she's not improving. She's not getting any better. She's not getting any safer. She's not enjoying it as much as she could if she got better on it. And the way that we think and our experts think she can get better is to actually watch somebody with her skiing with her on a ski bob. And she couldn't do that with a instructor from Gritchenville? Yeah, she could if she paid for it. Tell me how the Eagle Mountain works. That's where the instructional area is, is that right? Well, it isn't in an area. It isn't located at a specific area. It is a program that you pay for, and they have volunteers help people with disabilities. At the same time that everybody else is skiing the same mountain, huh? Same mountain, same time as everybody else is skiing. When they're instructing her, do they use a ski bob? They do, but they have volunteers who have never skied on a ski bob going down with her. Would they let her husband go down during that time with her on a ski bob? No. And that's essentially the accommodation that we're asking for. And the issue, again, getting back to I think what this case is about, is that the trial court determined as a matter of law that Mr. Colasar's use of the ski bob would create a fundamental alteration to the operation of the area. And we think that that determination can be made, but it's fact specific. And it has to be made after hearing, and we would ask this Court to demand the case for trial. Okay. Thank you. I want to save the rest of your time for rebuttal. That's fine. We'll hear from, I believe it's Mr. Morgan. Please, this is Greg Morgan for Bridgeable, worthy counsel. I cited the Fortune case to you because I thought that Fortune and Lentenny cases were the two cases that you would follow in terms of your analysis, not necessarily your ultimate reasoning, but they have ---- I'm having a difficult time hearing you. I'm sorry, Your Honor. I'll get ---- I thought the Lentenny and Fortune cases would be the cases that you would follow in terms of making your analysis in the case. They're the two Ninth Circuit cases, which I think cogently lay out how to do an analysis of this kind of case. Let me ask you a follow-up question to one I just asked opposing counsel about the way that Eagle Mountain special instruction works. Is it true that the instructors on that mountain also use a ski bob when they're instructing? The answer is yes, Your Honor. And if I could explain a little bit further, there are two areas, there are two different places where Ms. Murphy can get instruction at Bridger Bowl. Bridger Bowl has trained ski instructors. This is in the record, correct? This is in the record, yeah. This is not outside the record. They have trained ski instructors, and they did give Ellen Murphy at her request, they went out and purchased a ski bike and gave her two lessons on the ski bike at her request, after she had been using the ski bike at Bridger Bowl for ten years, the first time she'd asked for that. In addition to that, Bridger Bowl- Just one interruption to the question. These instructors are all volunteers, right? No, these are professionals that I'm talking about now. That's what I'm trying to do is straighten out that. There are two different programs. Okay. There's the certified ski instructor program at Bridger Bowl, and there is a program that Bridger Bowl has. It's not a Bridger Bowl program. It's offered by a nonprofit organization called Eagle Mount, and they service disabled people. And one of the places that they service disabled people is at Bridger Bowl. Bridger Bowl allows them to conduct their program at Bridger Bowl, and as you can see from the ski movie that you got a chance to look at as part of the record here, they allow her the opportunity to ski under controlled circumstances with the instructor or the volunteer. This is the volunteer now that comes and helps them do the instruction. It's a very controlled program in that there is a person on a ski bike, a person on skis, and Ellen Murphy. There are three people involved in this particular program. We think that's important because we don't want the- Wait a minute. You said three. I only got two of them. Ellen Murphy, the plaintiff in this case, a person on a ski bike for her to emulate, and then a person on skis. And the reason we need that person on skis is because at certain periods of time, Ellen needs assistance on the hill. For example, in the movie, you'll see that Mr. Colasar is narrating the movie, and right at the end of the movie he says, Well, Ellen has fallen down on her right side, and she will need to have the skier volunteer come over and help her get up because she is weak on that side and can't get up. All we want to do is to provide an opportunity for Ellen Murphy to enjoy this hill and to make sure that we can have control over the safety of everybody else on the hill as a result of it. I mean, that's the long and the short of all of this. Why couldn't her husband volunteer on the ski bike? He could volunteer on the skis. Or over the ski bike? Well, then we'd have to have another person to carry her ski bike and to help her get up and that kind of thing when she falls down. At the present time, you allow her to go down with just somebody on skis. On skis, and that's because a person on skis, we deem to be mobile enough to provide her with assistance both getting on the lift and if she should fall down on the hill. Well, let me ask you this. The appellant's stating that there are disputed issues on safety. If there is a safety, if safety is a disputed issue, may the reasonableness of accommodation be decided on a motion for summary judgment? And if so, what's your authority to that? May the reasonableness of an accommodation be decided on summary judgment? Because obviously you're saying you do have safety concerns and you think that this is the best way for her to do it and it's a reasonable accommodation. He's saying, well, no, it's not a showing that it would be unsafe to have one more ski bike and this, that, and the other. Okay, so back to Lindeny and Fortune. You look at necessity, you look at reasonableness, and if you find whatever you find in those two, if you find for the plaintiff, you still look at a fundamental modification. There are no disputed facts about the fundamental modification in this case. And that's what Judge Siebel ruled on. Because you're saying that you don't allow any ski bikes, you accommodated her with one, and having one more is a fundamental modification? Exactly. Why is that a fundamental alteration? Well, why is one snowmobile on the hill a fundamental alteration? That's the example that the district court used. You allowed her to use the ski bike, correct? Yeah, because the rule that we have is that except for disabled people, we limit it. It says a reasonable accommodation. So you determine by allowing her the ability to use a ski bike that that was a reasonable accommodation. It didn't alter your fundamental nature of your facility. So why does one more person fundamentally alter the operation that you provide? Because this person is not disabled. So, and to do that, and so if only disabled people can use a ski bike. So I gather what you're telling me is that if another person showed up that had a similar condition to Ms. Murphy and asked to use a ski bike, you would say, okay. We would, I believe, yes. I mean, if there were three people, you'd say okay. If there were 25 people. 25 people who were disabled like Ms. Murphy.  was such that with the ski bike and another person accompanying them, they could get on and off the lift safely. If they chose to use the ski bike rather than skis in that program, we would allow them to do that. So your main tensions, I understand, is that if you're allowing someone on a ski bike, that there has to be someone else with them on skis. Is that it? If the, we, every disability, Your Honor, every disability we have to look at the person. We can't just make a blanket statement like that. But every person that's disabled in a way that. Well, let's talk about her. Her specifically. Right. All right. So you're saying that in order to be safe, a person accompanying her has to be on skis. That's correct. And if she were to do it alone without a person accompanying her, would not be safe. That's correct. And I think that movie establishes that clearly. If you look at the end of that movie, you see that she falls down, and her husband admits somebody is going to have to go and pick her up. And that's the argument that we've been making, is that if she. Isn't that part of the reasonableness determination, as Judge Callahan suggested? Well, you know, the issue of my way of thinking, if you do the three-step analysis, does the reasonableness interpretation apply to the fundamental alteration issue? That's the question. Reasonableness clearly applies to. I'm just reading you the statute. It just says, failure to make reasonable modifications. And then it goes on and it says, when necessary. And then it has the clause, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages or obligations. That's what I'm arguing, Your Honor, is that you look at necessity, you look at reasonableness, and then you look at fundamental alteration. And fundamental alteration is simply fundamental to the particular business that's involved. And it has, it doesn't, the reasonableness standard, and there's a test in Fortune. It says, the effectiveness, you look at the effectiveness of the modification in light of the nature of the disability and the cost to the organization that would implement it. That's to look to see whether the accommodation is reasonable. That's not to look to see whether the accommodation alters the fundamental nature of the goods. Let me ask you this. Is it your contention that her request to allow her husband to accompany her on a ski bomb, that that is unreasonable, that's an unreasonable proposed modification of the services they render? Or do you contend it's reasonable, but it's trumped by the other fundamentally alters the nature of the services? No, we contest that it's unreasonable. But I will concede to you that there is a dispute over the reason that it's unreasonable. Okay. We think the record establishes that they admit safety issues. But they do not admit safety issues. They admit the degree, they deny the degree of the safety issues. They want to argue whether it's as safe as everybody else rather than a different kind of safe or whatever. All we're saying is, and so we think if we went back and had a trial over, or a hearing over the summary judgment with regard to reasonableness, or a trial if there's a jury trial on this, that would be an issue to be decided if it got sent back. Let me ask you this. Then it goes on to say when such modifications are necessary. So do you contend that the modifications are not necessary? I do. She uses the hill whenever she wants and has for ten years. She's cheat. That's why I think they're not necessary. I mean, bridge or bowl, I have this tendency to take my clients on like that. How do you factor in, and I question the appellant strenuously on this point, that it seems that she wants to get better at her skiing, and it seems that she also wants to participate in the sport to rehabilitate her cognitive process. How do you factor that? I mean, is that, you know, how do you, how responsible are you in your accommodations to making sure someone's the best skier that they can be or that they can rehabilitate on your hill? First of all, we allow Eagle Mount to handle the rehabilitation stuff. We handle uphill transportation and safety issues and groom the hill and provide ski patrollers and, you know, various other things, but we don't do rehabilitation. We do offer ski instruction, and we offer ski instruction to someone in her position if they request this from us. We have certified ski instructors that can deal with that. What if she were accompanied by her husband on a ski bob and a third person on skis? Would that be all right? You know, I do, and let me tell you why. It might be just a little bit outside the record, but let me tell you why. When you say I do, I'm not sure what you mean. Well, I think it, I think it, I think except for the fundamental alteration issue, I think that would be reasonable, and let me tell you why. Because I've cited to you this ANSI B-77 standard that says everybody has to be able to get on and off the lift safely. They have to have the physical ability to do that. And we allow her and people like her to come up there when they have somebody that's accompanying them that can, she needs a little assistance getting up to the lift line, she needs a little assistance getting turned around so she can sit on the chair when it goes up. And we think that somebody doing that needs to have hands free, as in a person that's a skier. If the person has a ski bike in their hand, and this is the problem that we got into with her and her husband, he wants to carry, to have her carry her ski bike and he to carry the other ski bike on the double chair lifts that we have. That doesn't work because there's nobody there to help. And there's two ski bikes hanging off of that thing, and they'll fall, and if they fall on somebody or they fall and somebody runs into them, we got a problem. So that's kind of the rationale that's going through our mind about that. That's why I say I think we can win the issue on reasonableness on the safety issue, even though we've said that we've agreed that the safety, strictly speaking, the safety issue for purposes of reasonableness is in dispute. But it doesn't affect the fundamental nature issue, and that's what Judge Siebel said. The follow-up to Judge, the rest of the response to Judge Hugg's question was, this third person who was on skis, on the ski lift, would be available to assist either Ms. Murphy or the husband if he were to fall. And that's why you say it would not be an unreasonable and it would meet. Exactly. We want the person that's helping her on and off the lift to have their hands relatively free, and we think that's necessary to do that. This is all just kind of a struggle over, you know, this is a terrible thing that you guys have to deal with here, because this is a struggle over an organization that wants to see this lady ski but wants to have some control over how she does it. And I don't know where you draw the line. That's why we're here, I guess, is because somebody's got to do it. I don't have anything else. Thank you. I think the reasons that we have district courts is to make a record and make factual determinations about whether or not these things that you've all been questioning us. This was summary judgment, wasn't it? This was summary judgment. So we're not making factual determinations? No, you're not. And what we're arguing is that if you let the district court, if you send the case back and say district court, hear this case, then the district court could decide, for example, whether or not it was necessary to have a third person along or whether Mr. Colasar could handle the bike and help Ellen get off the lift. The district judge could decide whether if Ellen fell off the bike and Mr. Colasar was skiing with her on his ski bob that he could stop his bike and help her up. Those are all factual determinations that are still unresolved in this case, and that's why we would request that you send it back to the district court. What about the, just curious, your reaction, if the husband was on the ski bob and there was a third person on skis, is that satisfying? That would make things much easier for Bridger, as I understand counsel's argument. It would make it a little bit more difficult for Mr. Colasar because they would have to find somebody to ride along with them. But if that were the ruling of the court, I mean, we would abide by that. Oh, but that can't be the ruling of this court. It can't. I mean, we're reviewing summary judgment. That's true. That's so, I mean. The central issue in this case is whether or not Judge Siebel erred in determining that to permit Mr. Colasar to ride a ski bob with his wife that constituted a fundamental alteration of the business of the ski hill, and we think that it didn't. And we would like to argue that with Judge Siebel. Thank you. Okay. Thank you. We appreciate your arguments. Thank you very much. And the matter will be submitted, and there will be an adjournment until tomorrow. All rise. The court for this session stands adjourned. Thank you.
judges: Hug, Paez, Callahan